UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL VON JOHNSON,

      Petitioner,

                                    CASE NO. 2:09-CV-11688

v.                               JUDGE NANCY G. EDMUNDS
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

RAYMOND BOOKER,

      Respondent.[1]

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      D.   *Substitute Counsel/Self-Representation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           1.   *Factual Background Relating to Petitioner's Waiver of Counsel* . . . . . . . . . . . . . . . 10
           2.   *Denial of Substitute Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           3.   *Self-Representation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      E.   *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
           1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
           2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                a. Pre-Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                b. Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                c. Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      F.   *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      G.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 24
           1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
           2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
      H.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

_____

    [1]By Order entered this date, Raymond Booker has been substituted in place of Cindi Curtin as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Darryl Von Johnson is a state prisoner, currently confined at the Mound Correctional Facility in Detroit, Michigan.

        2.      On May 11, 2006, petitioner was convicted of two counts of armed robbery, MICH. COMP. LAWS § 750.529; and one count of assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, following a jury trial in the St. Clair County Circuit Court.  On June 12, 2006, he was sentenced as a fourth habitual offender to concurrent terms of 19-39 years' imprisonment on each conviction, to be served consecutive to a one-year jail term previously imposed on petitioner for violating his probation.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      THE TRIAL COURT DENIED DEFENDANT A FAIR TRIAL AND HIS DUE PROCESS RIGHTS BY: CONSOLIDATING THE CASES FOR TRIAL; VIOLATING DEFENDANT'S RIGHT TO COUNSEL; NOT PROVIDING PROPER LEGAL REPRESENTATION; NOT PROPERLY HANDLING THE MATTER OF DEFENDANT'S SELF-REPRESENTATION BOTH INITIALLY AND DURING THE TRIAL; NOT GRANTING THE DEFENDANT AN ADJOURNMENT FOR TIME TO PREPARE FOR TRIAL; GIVING INACCURATE AND INCOMPLETE INSTRUCTIONS; AND DENYING DEFENDANT'S MOTION TO CORRECT INVALID SENTENCE.

        II.     THE PROSECUTOR'S ACTIONS DENIED THE DEFENDANT A FAIR TRIAL AND HIS DUE PROCESS RIGHTS UNDER THE MICHIGAN AND FEDERAL CONSTITUTIONS.

        III.    THE DEFENDANT'S SENTENCE WAS INVALID BECAUSE IT WAS

2

BASED ON INACCURATE INFORMATION, I.E., IMPROPER SCORING OF THE LEGISLATIVELY IMPOSED SENTENCING GUIDELINES, USE OF AN INCORRECT BURDEN OF PROOF AND INSUFFICIENT FACTS; THEREFORE, HIS DUE PROCESS RIGHTS WERE VIOLATED.

IV.     CORRECTLY SCORING THE GUIDELINES WOULD REQUIRE RESENTENCING.

V.      THE SENTENCES ON THESE FILES WERE IMPROPERLY MADE CONSECUTIVE TO THREE OTHER FILES.

VI.     THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Johnson*, No. 271442, 2007 WL 4179346 (Mich. Ct. App. Nov. 27, 2007) (per curiam).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Johnson*, 481 Mich. 887, 749 N.W.2d 265 (2008).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 4, 2009. As grounds for the writ of habeas corpus, petitioner's application appears to raise all of the claims asserted as Claim I in the Michigan Court of Appeals, the prosecutorial misconduct claim asserted as Claim II, the sentencing claim raised as Claim III, and the ineffective assistance of counsel claim raised as Claim VI.

6.      Respondent filed his answer on November 12, 2009. He contends that petitioner's prosecutorial misconduct claim is barred by petitioner's procedural default in the state courts, and that all of the claims are without merit.

7.      Petitioner filed a combined reply to respondent's answer and a request for evidentiary

3

hearing on December 23, 2009. In his reply, petitioner asserts that he intends to raise only his waiver of counsel and ineffective assistance of counsel claims, and he explicitly "voluntarily dismisses any other issues that might be considered brought by Petitioner." Reply, at 1.

B.    *Factual Background Underlying Petitioner's Conviction*

As explained by the Michigan Court of Appeals, petitioner's convictions arise from his robbery or assault of three separate victims, charged in two cases:

> Defendant was charged in two separate files. He was originally charged in LC No. 05002854-FC with armed robbery against Angela Essenmacher and assault with intent to rob while armed against Jennifer Steiner. The offense against Essenmacher occurred on the afternoon of October 29, 2005, and the offense against Steiner occurred at approximately 2:00 a.m. on October 30, 2005. Defendant was separately charged in LC No. 05-002683 with armed robbery against Miranda Stimac for an offense that was committed at approximately 3:00 a.m. on October 30, 2005. Both cases were consolidated for trial.

*Johnson*, 2007 WL 4179346, at *1. The evidence adduced at trial was accurately summarized in petitioner's brief on appeal in the Michigan Court of Appeals:

> Angela Essenmacher testified that she worked at the Black River Party Store as a cashier and on October 29, 2005, she was robbed at approximately 12:40 p.m., shortly after lunch. The witness said she was over filling the beer cooler when the suspect came back in and asked if he could ask her a question. He then came over to her, grabbed her arm, and asked her to give him all of the money out of the cash register. She said it looked to her like there was a handle of a steak knife or kitchen knife in his other hand. She said that [the] handle end was out and the blade of the knife was facing the other way. She said he had a plastic bag and led her over to the cash register and she began to empty the money into the bag. He asked her for the stuff under the drawer and she finished emptying out the top part, then took the stuff from the bottom, put it in the bag and he turned around and left. She said around $263.00 was taken, although there were things like stamps and other debit receipts and stuff which was all taken too. She said she then grabbed the phone and dialed 911.
>
> Jennifer Steiner testified she was working at Tim Horton's in the City of Port Huron on November 1, 2005. She said she was working at 2:00 a.m. with two other people who were working in the back, but she was the only one up front at the drive thru. She said a man came up to the drive thru and ordered a coffee with cream. He pulled up to the window and acted like he was looking for money in his pockets. He

said he was embarrassed being so big in such a small car and he was having a hard time finding his money. She told him not to worry about it and he still appeared to be looking for his money. He said he was so embarrassed he was going to get out of his car. The next thing she knew he had grabbed her wrist with his hand that also had a bag in it. A knife was in his other hand, and he told her to put all the money in the bag. She said she didn't take him seriously at first and asked him if he was being serious and he said no, no I'm not joking, put the money in the bag. She said she told him to take the coffee and go across the street and try to rob them, not her. He told her not to press the alarm button and she ended up jerking away from him, stepped back and told him there was a camera right in his face and that if he took the money he'd be caught. She said he looked up and saw the camera and got back into his vehicle. The witness then said after a while she became scared, but she hasn't lost any sleep over it and she wasn't traumatized, she didn't even leave work early that night. The police were called and a report was taken. She described the robber as a black heavyset male, not that tall, wearing khaki pants, a dark colored spring jacket, and a baseball cap. She said she told the police about the car which was a Ford, older model small blue car. She thought it could have been a Fiesta, but it was actually a Toshiba.

Officer Brian Carten testified that he was a Port Huron Police Officer and responded to a robbery call at Tim Horton's on October 30, 2005. He did spot the suspect vehicle, attempted a traffic stop, which turned into a foot chase and that is when the witness and other officers responded to back him up. This would have been around 3:17 a.m. on October 30th. He did say that by the time he got there the suspect was in custody although he heard they were having trouble taking him into custody and he'd been tasered.

The witness said that he was not asking the Defendant any questions, he was simply driving him to the hospital and the Defendant then made some statements to him. He said that when he was walking the Defendant to the patrol car, the Defendant first asked him how much time in prison he could get for armed robbery? He asked that question two more times in the car on the way to the hospital. At the hospital, while getting out of the patrol car the Defendant said it was the drugs that made him do it and he was cracking bad. At the hospital he again asked how much time he could get in prison for armed robbery several more times and at one point he made another statement saying that it was either death for himself, killing somebody or he had to do this, which the officer took as referring to the incident that night. He said the Defendant did match the description that he'd been given, as did the vehicle that the Defendant had been driving.

Miranda Stimak testified that on October 30, 2005, she was working at the Admiral Gas Station in Marysville at about 3:00 or 3:15 a.m., when she was robbed. She said there were no other employees in the store. She said a customer came in and bought a candy bar and she thought he was leaving, when he turned around with a knife, came within inches of her at her right side, and forced her to take the money out of the drawer. She said it appeared to be some kind of kitchen knife. He then handed her a white grocery bag to put the money in and told her to give him the

coins too.  He also had her lift up the register and check underneath it to make sure there was nothing left there, backed away toward the door and said silence, silence, silence and then left.  She said he took roughly $450.00.  She said the store has a store policy, they keep a $2.00 bill underneath the tens spot in the register and they record the serial number on it so that if there is a robbery they have a reference number.  She did say that the serial number from the $2.00 bill was given to the police.  She said she dialed 911 and a sheriff's car flew by just seconds after she called and then came back a few minutes later, she said it was all pretty quick.  She gave the police a description of a tall black male wearing a green shirt, dark coat, and a white hat.  The car was a two door blue Ford Fiesta with a white temporary tag in the back left rear window.  The vehicle did not have a metal license plate.  She saw him leave and go eastbound on Gratiot.  She identified the Defendant as the person who had robbed her.  She said he purchased a Hershey's mocha almond candy bar and that the candy bars have price tags on the m which also have the store name on it.  She said at the time the incident occurred she was scared and in fact was so scared she didn't work there anymore thereafter because she quit.  She did say there was video surveillance equipment there and the tape was provided to the police.  She identified a picture of the car as being the one that would have been used in the robbery and recognized the candy bar that he had purchased from the type and tag.

Officer Christopher Bean testified that he was a Police Officer with the City of Port Huron and after he received a dispatch regarding the robbery of the Admiral Gas Station went to Military and Ravenwood roads in order to observe.  He said a blue Ford Fiesta passed his location northbound on Military and it was being driven by a black male which he followed and activated his top lights.  He said that the blue Ford Fiesta turned on his directional signal as if to make a right hand turn and pulled into a driveway of a residence in the 3800 block of Military.  As the witness was stepping out of his car the driver of the Ford Fiesta stepped out and yelled what did I do wrong?  The officer ordered him to the ground and at that point the suspect began running from the vehicle.  There was no one else in the vehicle and the witness was in a uniform and marked patrol car with his lights going.  As the witness was chasing the suspect he gave him several loud commands to stop running and get on the ground, but there was no compliance.  He said he tried to use his taser, but missed and he went to reload the cartridge, but dropped it.  He eventually caught up to the suspect.  He identified the Defendant as the person who he chased and apprehended.  He said he did not inventory the vehicle, but he did look inside and saw a plastic bag on the front driver's seat with a large kitchen style knife as well as a Hershey candy bar.  He said he remembered the BOL from Tim Horton's shortly after 2:00 or 2:30 a.m.  The incident in Marysville was approximately 3:00 or 3:15 a.m.  He said in reference to the Marysville incident the description was a blue Ford Fiesta and regarding the Tim Horton's incident it was a small blue vehicle which didn't specify a make or model, just a small blue two door car.

Sergeant Thomas Cowhy testified that he worked for the City of Marysville and in particular was on duty on October 30, 2005.  He said he did have an opportunity to talk with the suspect of the armed robbery which occurred at the

Admiral Gas Station.  He said they were at the County Jail and the suspect asked to speak with an officer and the prosecutor.  The witness contacted the prosecutor's office who said that he could not come over the jail and that information was given to the Defendant.  The Defendant said that he was the one that had committed the three armed robberies.  The Defendant asked the witness what the condition of the clerk in Marysville was and indicated that he did not hurt her.  He said the devil had him due to the fact that he was under the influence of crack cocaine.  He did not believe the court system should spend a lot of money on him because he was guilty and he needed some help.  He said he was at church earlier that day and spoke with a person at his church, but that person did not seem like they were interested in him so he left and went out and committed the armed robberies.

Detective Duane Loxton testified that he was a detective with the Port Huron Police Department and participated in the investigation in the armed robberies in Port Huron and at the Admiral Gas Station.  He said that he went to the jail to conduct an interview with the Defendant.  He knew he had only a short time because the Defendant was scheduled to be arraigned at 12:30 p.m. and it was 11:58 a.m.  He wanted to talk with the Defendant about the Tim Horton's and the Black River Party Store robberies.  He said he was aware of the Marysville robbery, however he hadn't seen a report at that time.  He said he spoke with the Defendant and gave him his *Miranda* warnings from a *Miranda* card.  After reading the *Miranda* warnings to the Defendant, the Defendant said he was willing to talk with the officer.  At first the Defendant said that he'd thought about talking to an attorney.  At that time the witness stopped and told the Defendant if he wanted an attorney, he had the right to one and the officer wouldn't stop him from doing that, but then the Defendant just started talking and made several statements.  The Defendant said that he'd been smoking crack cocaine, that he had some domestic problems because his fiancé had apparently been with another guy or something like that and he was upset over that.  He said he was worried about the way the girls felt that he had robbed and he was concerned about them and wanted to make sure they were okay.  The officer did assure [him] that they were okay because he knew they were.  He said they talked about a few more things and basically the Defendant made the comment that he did all three of the robberies.

Pl.-Appellant's Br. on Appeal, in *People v. Johnson*, No. 271442 (Mich. Ct. App.), at 1-6 (citations to trial transcript omitted).

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

8

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Substitute Counsel/Self-Representation*

Petitioner first contends that he was improperly denied substitute counsel and that he did not

knowingly and voluntarily waive his right to counsel.  The Court should conclude that petitioner is

not entitled to habeas relief on this claim.

    1.    *Factual Background Relating to Petitioner's Waiver of Counsel*

    Attorney Joseph Kanan was initially appointed to represent petitioner.  The week before the

initially scheduled trial date, petitioner sought new counsel.  The trial court granted petitioner's

motion, and attorney Terrence P. Houlahan was appointed to represent petitioner.  On the second

scheduled trial date, petitioner entered a guilty plea pursuant to a plea agreement.  However, at the

time of sentencing, petitioner sought to withdraw his guilty plea.  The trial court granted that motion,

and allowed petitioner to withdraw his plea.  At that time, petitioner also indicated that he wanted

a new attorney, but the trial court denied the request.  *See* Tr., dated 4/10/06, at 14.  On the newly

scheduled trial date, petitioner again requested new counsel.  Petitioner complained that counsel had

failed to file motions and to visit him.  *See* Trial Tr., Vol. I, at 6-7.  Upon questioning by the trial

judge, petitioner admitted that counsel had discussed the case with him, but had not done so "in

depth."  *Id.* at 10.  Petitioner also complained that he had not been provided copies of the

surveillance tapes, but the prosecutor and defense counsel indicated that counsel had the opportunity

to view all of the tapes.  *See id.* at 11-15.  Defense counsel also indicated that he did not file the

motions requested by petitioner because he felt they were frivolous.  *See id.* at 15.

    The trial judge then informed petitioner:

> All right.  I'm satisfied, you know, you have rights, but the People have
> rights, too.  And you don't have the right to keep maneuvering the, the system by
> asking for an attorney when it comes up for trial.  I'm satisfied that this gentleman
> is properly prepared.  If you want to represent yourself, you can, and then we'll go
> through the ritual of, of trying to determine, you know, that you know what you're
> doing.  If, if we do that, you're going to be subject to the Rules of Evidence as any
> other person.  You're going to be – have to conduct yourself as I would expect any
> lawyer to expect to conduct himself.  I will keep Mr. Houlahan at your hand – right

at your side so that you can consult with him on, on legal issues should they come up. So, you can have your choice, but you're not going to delay this trial any longer. If you want to represent yourself, you tell me now. Otherwise, I'm satisfied with Mr. Houlahan. I've known him to be a, a reputable, competent attorney. I don't see any reason for me to discharge him at this time as your attorney.

So, you tell me what you want to do.

*Id*. at 15-16. Petitioner then indicated that, without stating that he was going to represent himself, that he had "prepared my own opening statement which I want to do, and my own cross and direct exam. I don't have no witnesses." *Id*. at 17. There was then some discussion about attempting to locate two character witnesses that petitioner wanted to testify on his behalf, with the trial judge indicating that the court and defense counsel would attempt to contact the witnesses. *See id*. at 17-22. The judge then indicated: "The motion to, to discharge the attorney is denied. You have the option of representing yourself, if you wish. Your attorney will be at your side to advise you. That will have to be your determination. But if you decide to represent yourself, then you will be subject to the same rules and regulations as any attorney would be in presenting his case." *Id*. at 22. Defense counsel informed petitioner that he "can't have it both ways. You can't make argument, you can't cross-examine witnesses unless you represent yourself. If I'm representing you, I do that. Not you. But you can't have it both ways." *Id*. Petitioner then stated, "Yeah, I represent myself." *Id*. The court again informed petitioner that he would "have [to] present your case as any, as any lawyer would. You don't get special rules because you're representing yourself." *Id*. at 23.

After jury selection had been completed, the prosecutor requested that the court make a "good clear record" of petitioner's waiver of his right to counsel. *Id*. at 84. The trial court then made clear that petitioner understood "that in representing yourself there are dangers that you don't understand some parts of the law and yet I'm going to be obligated to see that you adhere to the, the law, as I'm going to expect the Prosecution to adhere to the Rules of Evidence." *Id*. at 85.

2.    *Denial of Substitute Counsel*

To the extent petitioner challenges the trial court's failure to appoint substitute counsel, his claim is without merit.

### a.  Clearly Established Law

Second, petitioner was not entitled to a new court appointed attorney.  The Sixth Amendment right to counsel contemplates a corollary right to the counsel of one's choice, and thus a criminal defendant who has the desire and the financial means to retain his own counsel generally "'should be afforded a fair opportunity to secure counsel of his choice.'" *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  However, "[a]lthough the Sixth Amendment contemplates a right to counsel of choice, that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel."  *Haynie v. Furlong*, No. 98-1177, 1999 WL 80144, at *1 (10th Cir. Feb. 17, 1999).  As the Supreme Court has recently explained, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2565 (2006).  Further, the right to counsel of one's choice is not absolute, and "is circumscribed in several important respects."  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Importantly, the right to counsel of one's choice "must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court."  *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988); *see also*, *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of that right must be balanced against the

12

court's authority to control its docket."). Further, as the Supreme Court has explained, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Id*. (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984). Because an indigent defendant has no absolute right to appointed counsel of his choice, and because the focus of the Sixth Amendment inquiry is on effective advocacy, "[a] criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991); *accord United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

### b. Analysis

The Michigan Court of Appeals rejected petitioner's claim, reasoning that petitioner had failed to show good cause for the appointment of substitute counsel. Specifically, the Court noted that petitioner admitted that counsel had discussed the case with him, and defense counsel indicated that he had reviewed the videotapes and obtained necessary discovery. Further, the court noted that petitioner had failed to identify any non-frivolous motions that counsel had failed to file. *See Johnson*, 2007 WL 4179346, at *2. Because petitioner "failed to demonstrate adequate cause for substitution," and because "new counsel had already been appointed once before at [petitioner]'s

13

request, and another substitution on the day scheduled for trial would have unreasonably disrupted the judicial process," the court of appeals concluded that the "trial court did not abused its discretion in denying [petitioner]'s request for new counsel." *Id*. The Court should conclude that this determination was reasonable.

Here, petitioner failed to establish good cause for substitution of counsel, "such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith*, 923 F.2d at 1320. Petitioner does not allege that there was any irreconcilable conflict between himself and counsel, or that counsel was acting with a conflict of interest. While petitioner does contend that there was a breakdown in communication, he does not allege the type of complete breakdown for which substitute counsel is warranted. Rather, petitioner contends only that counsel was unprepared and had not presented various motions which he thought should be brought. This is insufficient to constitute the type of complete breakdown justifying appointment of substitute counsel. *See United States v. Carillo*, 161 Fed. Appx. 790, 793 (10th Cir. 2006); *cf. Morris v. Slappy*, 461 U.S. 1, 13-14 (1983) (there is no constitutional right to a "meaningful attorney-client relationship."). Further, petitioner's request came on the third scheduled trial date, after petitioner had already been appointed substitute counsel and withdrawn his guilty plea, and the trial court inquired extensively into the bases for petitioner's dissatisfaction with counsel. *See United States v. Johnson*, 961 F.2d 1488, 1491 (10th Cir. 1992). In these circumstances, petitioner was not denied his Sixth Amendment right to counsel by the trial court's failure to appoint substitute counsel.

   3.   *Self-Representation*

To the extent petitioner contends that his decision to represent himself was not knowing and

voluntary, the Court should likewise conclude that petitioner's claim is without merit.

### a. Clearly Established Law

The Sixth Amendment, applicable to the states through the Fourteenth Amendment Due Process Clause, provides that a criminal defendant shall have the right to the assistance of counsel in his defense. *See* U.S. CONST. amend. VI.  This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself. *See Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 833-34 (1975).  The right to assistance of counsel and the right to self-representation are thus correlative rights; the assertion of one necessarily constitutes a waiver of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970).  Nevertheless, a defendant's waiver of his right to counsel and decision to proceed *pro se* must be knowing and intelligent. *See Faretta*, 422 U.S. at 835; *Carnley v. Cochran*, 369 U.S. 506, 516 (1962).  As the Supreme Court explained, in order for the defendant's decision to be knowing and voluntary, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  However, the Supreme Court has "not prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), and there is "no sacrosanct litany for warning defendants against waiving the right to counsel." *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).  Rather, the adequacy of a defendant's waiver is determined from the facts and circumstances of the case. *See Tovar*, 541 U.S. at 88.

### b. Analysis

The Michigan Court of Appeals rejected petitioner's claim that his waiver of the right to counsel was not knowing and voluntary, explaining that "the trial court informed [petitioner] that he would be subject to the same rules as any attorney, . . . later referred to the maxim that 'an attorney who represents himself has a fool for a client,' and explained to [petitioner] that although he had no legal background and did not understand parts of the law, he would have to follow proper trial procedures and rules." *Johnson*, 2007 WL 4179346, at *3. The court of appeals also concluded that petitioner's request to represent himself was unequivocal, because after substitute counsel was denied and petitioner was given the choice of proceeding with current counsel or representing himself, petitioner "clearly stated that he wanted to represent himself," and "the trial court repeatedly gave [petitioner] the option of changing his mind, but [petitioner] never exercised that option[.]" *Id*. The Court should conclude that this determination was reasonable.

At the outset, the mere fact that the trial court gave petitioner the option of proceeding with appointed counsel or representing himself did not render petitioner's waiver of counsel involuntary. Because, as explained above, counsel was performing adequately and was prepared for trial, petitioner's waiver of counsel was not involuntary merely because he was forced to choose between proceeding with counsel and representing himself. *See Payne v. Smith*, 207 F. Supp. 2d 627, 643-44 (E.D. Mich. 2002) (O'Meara, J.). Further, petitioner's assertion that the trial court failed to comply with state law in allowing him to waive his right to counsel does not entitle him to habeas relief. In the first place, the Michigan Court of Appeals concluded that the trial court did comply with Rule 6.005(D), and this determination of state law is binding on this Court. *See Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). And, even if the trial court did fail to comply with Rule 6.005(D), this

16

would not provide a basis for habeas relief.  As noted above, there is no particular inquiry or litany of questions which a trial court must perform as a matter of federal constitutional law, and any failure of the trial court to comply with Rule 6.005(D) would raise solely an issue of state law for which habeas review is not available.  *See Smith v. Smith*, No. 05-CV-74045-DT, 2007 WL 1585653, at *6 (E.D. Mich. May 31, 2007) (Hood, J.); *Howell v. Rubitschun*, No. 04-CV-71975, 2005 WL 2319012, at *7 (E.D. Mich. Sept. 20, 2005) (Steeh, J.).  *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Turning to the constitutional issue, the Michigan Court of Appeals's determination that petitioner's waiver of counsel was knowing, voluntary, and intelligent was reasonable.  As noted above, there is no particular formula that a court must recite in accepting a defendant's waiver of counsel, *see Tovar*, 541 U.S. at 88, nor is a state court required to conduct any particular "searching inquiry" into the basis of defendant's waiver, *see Payne*, 207 F. Supp. 2d at 644.  All that is required is that a defendant be apprised of the dangers of proceeding without counsel.  Here, the record shows that petitioner was well aware of these dangers.  The trial court repeatedly informed petitioner that he would be required to abide by the rules of evidence, and warned petitioner that he was unschooled in the law.  Despite these warnings, petitioner never equivocated either in his request to proceed without counsel or in his belief in his ability to do so.  Further, petitioner was well prepared to represent himself, having come into court prepared and wanting to give an opening statement and question witnesses.  In these circumstances, the Michigan Court of Appeals did not unreasonably apply clearly established law in concluding that petitioner's waiver of counsel was knowing, intelligent, and voluntary.  *See, e.g.*, *United States v. Mahasin*, 442 F.3d 687, 691-92 (8th

17

Cir. 2006); *United States v. McKenzie*, 160 Fed. Appx. 821, 826-27 (11th Cir. 2005); *United States v. McDowell*, 814 F.2d 245, 247-49 (6th Cir. 1987); *Payne*, 207 F. Supp. 2d at 644.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Ineffective Assistance of Counsel*

Petitioner also contends that he received ineffective assistance of counsel.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant

18

decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard

19

against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

   2.    *Analysis*

The exact nature of petitioner's ineffective assistance of counsel claim is unclear. In petitioner's habeas application, the entirety of his ineffective assistance claim is that

[c]ounsel was not prepared and clearly was at a disadvantage to prosecution [sic] because evidence was not viewed by counsel or cases investigated thoroughly by counsel, assisting counsel did not have any pertinent information that would help ascertain any trial strategy in the prerequisite of preparing for trial i.e. two cases. He was remiss in his duties as an attorney and assisting attorney.

Pet., Att. B. Petitioner does not expound on his ineffective assistance claim in his reply brief. In his direct appeal in the state courts, petitioner also claimed that counsel was ineffective for failing to object on various bases to the scoring of the sentencing guidelines. The Court should conclude that each of these claims is without merit.

   *a.    Pre-Trial*

Petitioner first contends that counsel was ineffective because he did not thoroughly review the evidence and investigate the case, and was therefore not prepared for trial. First, the record belies petitioner's contention that counsel was unprepared. The record makes clear that counsel had received discovery from the prosecution, reviewed the videotapes, and conferred with petitioner regarding the case. Second, petitioner has failed to establish prejudice. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition

20

for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Here, petitioner has identified no specific defense witnesses counsel failed to interview or call, nor identified what evidence these witnesses would have provided, nor has he suggested any other evidence or defense theories that further investigation would have provided. Thus, petitioner has failed to meet his burden of demonstrating counsel's ineffectiveness.

### b.  Trial

To the extent petitioner is attempting to assert that standby counsel was ineffective during trial, any such claim is without merit. Although it is advisable for a trial court to appoint standby counsel to assist a *pro se* criminal defendant–and indeed a court may do so even over the defendant's objection, *see Faretta*, 422 U.S. at 834 n.6–there is no constitutional right to the appointment of standby counsel, nor is a court required to permit "hybrid" representation by a *pro se* defendant and standby counsel together. *See United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)); *United States v. Bova*, 350 F.3d 224, 226 (1st Cir. 2003); *United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir. 1998). And, "[w]here there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also*, *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982)

(per curiam).  For this reason, the allegedly ineffective assistance of standby counsel does not provide a basis for relief.  *See United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998); *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

### c.  Sentencing

Finally, to the extent petitioner contends counsel was ineffective for failing to challenge certain scorings of offense variables under the Michigan sentencing guidelines, his claim is without merit.  The Michigan Court of Appeals addressed each of petitioner's guidelines scoring claims, rejecting them and concluding that there were "no scoring errors."  *Johnson*, 2007 WL 4179346, at *5; *see id.* at *5-*8.  In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court.  *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action.").  Because petitioner's guideline scoring objections were meritless as a matter of state law, counsel was not ineffective for failing to make these objections at sentencing.

## F.   *Evidentiary Hearing*

Petitioner also seeks an evidentiary hearing to develop evidence in support of his claims. The Court should conclude that an evidentiary hearing is not appropriate.  In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2).

In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
>
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted). Thus, "'an evidentiary hearing is not required on issues that can be resolved by reference to the state court record.'" *Id.* (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)). Here, an evidentiary hearing would not have the potential to advance petitioner's ineffective assistance of counsel claims.

Even assuming that an evidentiary hearing were permitted here under § 2254(e)(2), one is not necessary under Rule 8. Petitioner's claims that he was denied substitute counsel and that his waiver of counsel was involuntary are claims which may be resolved on the basis of the record. Further, petitioner's ineffective assistance of counsel claims relating to the trial and sentencing can be resolved solely by reference to the state court record. Although an evidentiary hearing might possibly develop evidence in support of petitioner's pre-trial ineffective assistance claim, as noted above petitioner has failed to identify any witnesses or evidence counsel should have investigated.

23

The habeas rules "do[] not . . . authorize fishing expeditions. A habeas petitioner must make sufficiently specific factual allegations; conclusory allegations will not suffice to mandate either discovery or a hearing." *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir. 1996); *see also*, *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006). Petitioner's "'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing.'" *Washington*, 455 F.3d at 733 (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Accordingly, the Court should conclude that an evidentiary hearing is not necessary.

G.     *Recommendation Regarding Certificate of Appealability*

    1.     *Legal Standard*

    As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason;

24

that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also deny petitioner a certificate of appealability.  As explained above, because counsel was prepared for trial, petitioner failed to establish good cause for a substitution of counsel on the

date set for trial.  Thus, the resolution of this claim is not reasonably debatable.  Further, the record makes clear that petitioner was fully informed of the dangers of self-representation, and knowingly waived his right to proceed with counsel.  Thus, the resolution of this claim is not reasonably debatable.  Finally, because (a)petitioner has failed to identify any specific way in which counsel's preparation was deficient, (b) he had no right to effective stand-by counsel at trial, and (c) the Michigan Court of Appeals rejected petitioner's underlying sentencing claims as a matter of state law, the resolution of petitioner's ineffective assistance of counsel claim is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

H.     *Conclusion*

        In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health*

& *Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives_____
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 9/8/11


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on September 8,  2011.

                        s/Eddrey Butts_____
                        Case Manager